UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
JOYETTE NEDD,

                              Petitioner,

                -against-

MARK L. BRADT, *Superintendent of*
*Attica Correctional Facility,*

                              Respondent.
-------------------------------------------------------X

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★   MAY 15 2019   ★

BROOKLYN OFFICE

**MEMORANDUM
AND ORDER**
13 CV 5569 (CLP)

**POLLAK**, United States Magistrate Judge:

On October 3, 2013, petitioner Joyette Nedd, proceeding pro se, filed this Petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, raising seven claims. (Pet.[1]). On September 16, 2016, petitioner filed an Amended Petition, adding six additional claims and removing two. (Am. Pet.[2]). On April 2, 2019, the Petition was referred to the undersigned to prepare a Report and Recommendation. Thereafter, the parties consented to the undersigned for all proceedings in this case.

For the reasons set forth below, the Court denies the Amended Petition in its entirety.

FACTUAL BACKGROUND

The charges in this case stem from the attempted shooting of Elsworth George ("George") on October 16, 2006. The facts set forth below are derived from the testimony presented during petitioner's trial, which commenced on January 7, 2009 in Kings County

---

[1] Citations to "Pet." refer to the Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody, filed on October 3, 2013, ECF No. 1. The pages referred to in the Petition reflect the "Additional Pages" attached to the Petition.

[2] Citations to "Am. Pet." refer to petitioner's Amended Petition, filed on September 16, 2016, ECF No. 9. The pages referred to in the Amended Petition reflect the "Additional Pages" attached to the Petition.

Supreme Court.

## A. Elsworth George's Testimony

At trial, Elsworth George testified that on October 16, 2006, he was sitting in his car at the corner of Nostrand Avenue and President Street in Brooklyn, New York when he saw petitioner standing in front of his car. (Tr.[3] at 185-86). George, a 48-year old certified nursing assistant and former police officer in Antigua, testified at trial that he knew petitioner as "Rafie" and had known him for about two years at the time of the incident.[4] (Id. at 177, 178, 181-82). According to George, he had a friend who lived near Nostrand Avenue and he would see petitioner approximately three or four times a week by the building located at 864 Nostrand Avenue, where George's friend, Trevor, lived. (Id. at 182). George testified that on two occasions, when female students came home from school, he heard petitioner make disrespectful remarks towards them, and George told him that it was not nice to speak to them in that way and petitioner should respect them. (Id. at 182-83). According to George, petitioner responded by telling George that he was a "faggot" and to "shut the f. . . up." (Id. at 183).

On October 16, 2006, at approximately 1:46 in the afternoon, George was sitting in his car after buying some juice in a nearby store, when he looked up and saw petitioner standing in front of him with a gun. (Id. at 185-86, 237). Petitioner asked George if he remembered petitioner, at which time George asked petitioner if he "was stupid." (Id. at 186). Petitioner pulled the trigger on the gun, but nothing happened; the gun jammed.[5] (Id. at 186-87). George

---

[3] Citations to "Tr." refer to the transcript of the trial proceedings before the state court, commencing on January 7, 2009, contained within the State Court Record, ECF No. 7.

[4] Throughout the record, petitioner's nickname is spelled both as "Rafie" and "Raffie." The Court uses the former spelling throughout this decision for the sake of consistency.

[5] The witness testified that he knew that the gun had jammed because he had guns when he was a police officer in Antigua. (Id. at 200).

2

then used this opportunity to get out of his car because he was "going to stop him [petitioner] from killing me." (Id. at 187). George testified that when he got out of the car, petitioner was at the front passenger side door, and as George reached the front of the car by the license plate, he realized that petitioner had gotten the gun to work and he heard a "pow." (Id. at 187-88, 191). At that point, George ran back towards the rear left side of his car and petitioner shot at him again. (Id. at 188, 191). George testified that the two of them kept running around the car, with petitioner shooting at him several times. (Id. at 189, 191). One bullet went into the door post of the car, and another bullet – shot at George when he was at the rear of the car – went into the windshield. (Id. at 192). George then ran behind the car to the rear passenger side and petitioner, who was at the left driver's side, shot at George again. (Id.) That bullet broke George's back passenger window. (Id. at 193). They continued to run around the car, with petitioner shooting at George five or six times. (Id.) The witness was shown various photographs and identified the damage to the car. (Id. at 198-99; People's Exs. 2, 3).

George testified clearly that the person he knew as "Rafie" was the one firing the shots, and that there was no one else close by when the shots were fired. (Tr. at 200-01). At some point, petitioner stopped shooting and started running down President Street. (Id. at 201). George explained that petitioner tried to go into a building, but it was locked, at which time petitioner ran back up President Street and turned left onto Nostrand Avenue. (Id. at 202). George attempted to follow him but his car was blocked in by another vehicle behind him, so he drove around the corner back onto Nostrand Avenue and called the police. (Id.)

When the police arrived approximately five to ten minutes later, George told them that he had been the person who reported the shots fired and that "Rafie" was the one who shot at him. (Id. at 203-04). George indicated the direction in which petitioner had run, and the officers went

3

looking for him but did not find him. (Id. at 204). George then got into the uniformed officer's police car and drove around looking for Rafie, but they did not see him. (Id. at 205-06). After that, the police took George to the 71st Precinct, where he spoke to Detective Charles Arnao. (Id. at 206). At that time, George gave the detective the other name by which he knew petitioner – "Joyette." (Id. at 207). He did not know petitioner's last name, but he made a phone call to petitioner's cousin, who told George that petitioner's last name was Nedd. (Id. at 208). George also gave the police a description of petitioner as about five foot, five inches, light skin, and slim build. (Id.) George testified that he was not hurt in the incident; there was just damage to his vehicle, which he paid $3,000 to repair. (Id. at 209).

On cross examination, counsel for petitioner questioned George extensively about why he was in the vicinity of Nostrand Avenue and President Street on October 16, 2006, pointing out that even though George had testified that he went there to visit a friend, he did not actually see his friend on that day. (Id. at 213). George explained on redirect that he had not gotten a chance to see his friend because he got "shot at." (Id. at 237).

Counsel asked if the witness and petitioner had a dispute because petitioner accused George of cheating at gambling, but George denied that he was gambling or was in a gambling house shortly before the incident. (Id. at 229-231). He denied that he had ever gambled with petitioner, but he admitted that he was angry because petitioner had failed to show him respect. (Id. at 231, 236). When counsel asked if George had gotten a machete out of his car during a prior dispute and chased petitioner, George denied that he ever chased petitioner. (Id. at 229-31).

Counsel also questioned George about where he drove with the police after the incident and for how long they drove around. (Id. at 217). Counsel asked if George told the police that the person who was shooting at him was shooting from a green Mercedes Benz, which the

4

witness denied. (Id.) George was also cross examined about his own past criminal history, which the prosecution had elicited on direct as having involved a conviction in August 1995 for driving a vehicle with a suspended license, and in February 2001 for bail jumping. (Id. at 178-180, 220, 223-24). On the latter occasion, George explained that he had been arrested for fighting with his girlfriend, and then he failed to appear in court because his father had died and he had gone to the Caribbean for the funeral. (Id. at 178-80, 220, 223-26).

### B. Detective Charles Arnao's Testimony

Detective Charles Arnao also testified for the prosecution. He testified that he had been a detective in the 71st Precinct for 11 years and had been a police officer for 16 to 17 years. (Id. at 240). He testified that at 1:46 p.m. on October 16, 2006, he received a call of a shooting at the corner of President Street and Nostrand Avenue. (Id. at 242). When he arrived at the scene, he observed crime scene tape, four spent shells, and two live rounds from a handgun. (Id.) He also saw the vehicle belonging to George with damage in the windshield and holes in the car. (Id.) He spoke to George briefly on the corner, and George told him that he could identify the person who shot at him because he had known the individual for approximately three years. (Id. at 243-44). George provided the detective with personal information about petitioner, and then the detective had George taken to the 71st Precinct. (Id. at 244). Other detectives were speaking to store owners and canvassing for witnesses, but no one was able to provide information as to what had happened. (Id. at 245). Nor was there any video surveillance that recorded the incident. (Id.)

Detective Arnao spoke to George again at the Precinct, and George gave the detective petitioner's "street name" as well as his first name. (Id. at 246). According to the detective, George then made a call and learned that petitioner's full name was Joyette Nedd. (Id. at 247).

5

The detective performed some computer checks and then attempted that day to locate petitioner at the address that the police had on file for him. (Id.)

The police finally located petitioner on December 27, 2006,[6] at which time Detective Arnao placed petitioner under arrest. (Id. at 248). After petitioner was arrested, George was shown a polaroid photograph of petitioner, and he identified petitioner as the shooter. (Id. at 212-213, 249). The detective also obtained certain pedigree information from petitioner, including his age, which was 22 at the time, his height, which was five foot, six inches, and his weight, which was between 150 and 160 pounds. (Id. at 250-51).

## C. Police Officer Daniel Domarecki's Testimony

Police Officer Daniel Domarecki also testified as a witness for the prosecution. (Id. at 266). He testified that on October 16, 2006, he and his partner Officer Dranteyva were assigned to the 71st Precinct to transport prisoners to Brooklyn Central Booking. (Id. at 267-68). He testified that he received a radio run and drove to the corner of Nostrand Avenue and President Street where he saw a male driving a dark Mercedes Benz SUV flagging down the police car and indicating that he had called 911. (Id. at 270-71). The officer observed a bullet hole in the windshield of the car and shattered glass from the rear right passenger window which was in the interior of the car. (Id. at 274-75). He also observed shells from the cartridges. (Id. at 275). After speaking to the male, who the officer identified as Elsworth George, the officer proceeded to canvass the area with Mr. George, looking for the person responsible for the damage to the vehicle. (Id. at 271-73). He proceeded southbound on Nostrand Avenue and went to the basement of the second building from the southwest corner of Nostrand Avenue and President

---

[6]Although originally the detective testified that the arrest occurred in 2007, he later corrected his statement to indicate that petitioner was arrested on December 27, 2006. (Compare Tr. at 248 with 251).

Street. (Id. at 273). No one was there, but the officer testified that the evidence collection team gathered evidence from the scene near the car and gave the evidence to Officer Dranteyva. (Id. at 275, 276-77).

On cross examination, the officer was questioned by counsel about the complaint report, which Officer Domarecki described as "usually the first recorded document." (Id. at 290-91). Defense counsel noted that there was no description as to what the person was wearing, nor were there any questions asked about the name or nickname of the shooter. (Id. at 293). Officer Domarecki denied any recollection of hearing that the person was shooting from a green Mercedes Benz. (Id. at 294).

### D. Police Officer Thomas Jacob's Testimony

Police Officer Thomas Jacob testified that he was assigned to the evidence collection unit in October 2006 and that when he arrived at the scene of the shooting, he observed two shell casings on the sidewalk, two shell casings in the street, two deformed bullets, and two live rounds in the street. (Id. at 305-07). He photographed the scene and packaged the evidence. (Id. at 308). On cross examination, he indicated that he did not take any fingerprints from the evidence. (Id. at 316).

### E. Detective John Kraljic's Testimony

Detective John Kraljic testified that he is a firearms examiner, and that he tests firearms and ammunition for operability. (Id. at 317). He was qualified by the court as an expert in the field of identification and operability of firearms and ammunition and in the field of microscopic examination. (Id. at 319). He testified that there were two deformed bullets collected from the scene and explained that they are classified as deformed because they have been fired and therefore altered from their original shape. (Id. at 326). He testified that all four shell casings

7

and the two live cartridges were all cycled through the same firearm, which he described as a .25 caliber pistol. (Id. at 328, 329). Finally, he explained to the jury what would happen if a gun jammed and how it would be cleared. (Id. at 331-32). He also explained that fingerprints are generally not taken from bullet casings because the heat generated from the discharge would evaporate the oils necessary for latent prints. (Id. at 333).

At the conclusion of the testimony, the defense made a motion to dismiss, arguing that the prosecution had failed to make out a prima facie case that petitioner intentionally fired any of the shots to cause physical injury or to kill George. (Id. at 335). Counsel also argued that George was incredible as a matter of law and his testimony should be discounted in its entirety. (Id. at 335-36). The court denied the motion, and the lawyers summed up before the jury. (Id. at 336, 338).

## PROCEDURAL BACKGROUND

### A. The Indictment

Following his arrest, petitioner was indicted in Kings County and charged with two counts of Criminal Possession of a Weapon in the Second Degree, in violation of New York Penal Law § 265.03[2], [3], one count of Attempted Murder in the Second Degree, in violation of New York Penal Law §§ 110.00/125.25[1], one count of Attempted Assault in the First Degree, in violation of New York Penal Law §§ 110.00/120.10[1], one count of Attempted Assault in the Second Degree, in violation of New York Penal Law §§ 110.00/120.05[2], one count of Criminal Possession of a Weapon in the Fourth Degree, in violation of New York Penal Law § 265.01[1], one count of Criminal Mischief in the Second Degree, in violation of New York Penal Law § 145.00[1], and one count of Menacing in the Second Degree, in violation of

New York Penal Law § 120.12[1]. (Koelsch Aff.[7] ¶ 5; Ind.[8]).

B. The Trial

The trial commenced before the Honorable Sheryl Parker on January 7, 2009, and on January 13, 2009, the jury returned a verdict of guilty on the charges of Attempted Murder in the Second Degree, Criminal Possession of a Weapon in the Second Degree, and Criminal Mischief in the Fourth Degree. (Koelsch Aff. ¶ 6).

C. Petitioner's Section 330.30 Motion and Sentence

On January 16, 2009, petitioner filed a pro se motion seeking to set aside the verdict pursuant to Criminal Procedure Law Section 330.30, alleging that the evidence in support of his conviction was insufficient and that his trial counsel was ineffective based upon a statement made by counsel at the end of his summation suggesting that the jury find petitioner "guilty." (See Tr. at 419-20, 426; see also Koelsch Aff., Ex. J[9] at 3). Although the trial court noted that a claim of ineffective assistance of counsel was not properly brought under Section 330.30, the court adjourned the sentence and appointed new counsel for petitioner. (Tr. at 421-22).

On March 10, 2009, the trial court denied the Section 330.30 motion (id. at 436), and sentenced petitioner to concurrent prison terms of 20 years on the Attempted Murder count, 15 years on the Criminal Possession of a Weapon count, and one year on the Criminal Mischief count. (Id. at 440). Petitioner was also sentenced to two concurrent five-year periods of post-release supervision with respect to the felony convictions. (Id.)

---

[7] Citations to "Koelsch Aff." refer to the Affidavit of Adam M. Koelsch in Opposition to Petition for Writ of Habeas Corpus, dated December 5, 2013, ECF No. 7.

[8] Citations to "Ind." refer to the Indictment, Number 11326/2006, attached to petitioner's Motion for a Writ of Error Coram Nobis, ECF No. 8.

[9] Citations to "Koelsch Aff., Ex. J" refer to the decision and order denying petitioner's motion to vacate the judgment of conviction, dated February 21, 2013 and entered February 26, 2013, attached as Exhibit J to the Koelsch Affidavit, ECF No. 7.

9

D.  The Direct Appeal

In July 2011, petitioner filed a direct appeal from the judgment of conviction through his attorney Lynn W.L. Fahey, claiming that the evidence was legally insufficient to prove his intent to kill the victim. (Koelsch Aff. ¶ 8; see also Appeal Br.[10] at 18-25). Petitioner also claimed that he had received ineffective assistance of counsel at trial because: 1) counsel failed to object to the police officer's testimony suggesting that petitioner had a criminal record; 2) counsel summed up by mistakenly asking the jury to find petitioner "guilty;" and 3) counsel failed to object to the prosecutor's allegedly improper comments during summation. (Koelsch Aff. ¶ 8; Appeal Br. at 26-38). In addition, petitioner argued that the sentence was excessive. (Koelsch Aff. ¶ 8; Appeal Br. at 38-41).

On December 27, 2011, the Appellate Division, Second Department, unanimously affirmed the trial court's judgment. People v. Nedd, 90 A.D.3d 1076, 934 N.Y.S.2d 848 (2d Dep't 2011). The Appellate Division held that "[v]iewing the evidence in the light most favorable to the prosecution, . . . we find the evidence was legally sufficient to establish defendant's guilt of attempted murder in the second degree beyond a reasonable doubt." Id. The court further stated that, "upon our independent review . . . we are satisfied that the verdict . . . was not against the weight of the evidence." Id. (citations omitted). The court found that the remaining contentions raised by petitioner on appeal were "without merit." Id.

On April 16, 2012, petitioner's application to appeal to the Court of Appeals was denied. People v. Nedd, 18 N.Y.3d 996, 968 N.E.2d 1007 (2012).

---

[10] Citations to "Appeal Br." refer to the Brief for Defendant-Appellant, dated July 2011, and labeled Respondent's Exhibit B in the State Court Record at page 444, ECF No. 7.

E.  The 2012 Motion to Vacate the Judgment

By motion dated October 9, 2012, petitioner moved to vacate the judgment of conviction pursuant to Criminal Procedure Law Section 440.10(1)(h),[11] arguing that: 1) the trial court was required to order a competency examination of petitioner, sua sponte, which it failed to do; 2) petitioner received ineffective assistance of counsel because his attorneys failed to request a competency examination; and 3) he received ineffective assistance of counsel because his attorneys failed to advise him about the prosecution's plea offers. (Koelsch Aff. ¶ 11; Koelsch Aff., Ex. H[12]).

On February 21, 2013, the state court denied petitioner's motion without a hearing. (Koelsch Aff., Ex. J).  The court found that there was "no reasonable basis" for the court to believe that petitioner was not competent to stand trial, based on the court's interactions with petitioner and his behavior during the proceedings. (Id. at 5).  Therefore, the court held that it was not required to order a competency examination sua sponte. (Id.)  Specifically, the court noted that petitioner had appeared in court more than 25 times, and "[a]t no time did any judge see a basis to order" an exam. (Id.)  With respect to petitioner's claim that he received ineffective assistance when his counsel did not request a competency examination, the court held that petitioner's attorneys' legal representation did not fall below state or federal standards. (Id. at 5-6).  Finally, the court denied petitioner's claim that his attorneys provided ineffective assistance by failing to advise him to accept a plea offer, finding that the claim was unsupported

---

[11] Criminal Procedure Law Section 440.10(1)(h) states that a court may vacate a judgment if it "was obtained in violation of a right of the defendant under the constitution of this state or of the United States." N.Y. Crim. Proc. Law § 440.10(1)(h).

[12] Citations to "Koelsch Aff., Ex. H" refer to defendant's Motion to Vacate the Judgment of Conviction under New York Criminal Procedure Law Section 440.10, dated October 9, 2012 and attached as Exhibit H to the Koelsch Affidavit, ECF No. 7.

by petitioner's papers and contradicted by counsels' affirmations.[13] (Id. at 6).

The Appellate Division denied petitioner's request for leave to appeal on July 26, 2013. (Koelsch Aff. ¶ 12).

### F. The Initial Habeas Corpus Petition

On October 3, 2013, petitioner, proceeding pro se, filed the initial Petition for a writ of habeas corpus in this Court. (Pet.). The initial Petition raised seven claims: 1) that petitioner is actually innocent of the attempted murder charge, and but for trial counsel's ineffective assistance and prosecutorial misconduct, the result of the proceeding and his appeal would have been different; 2) that the indictment failed to give him notice of the conduct forming the basis of the attempted murder charge; 3) that the New York sentencing scheme lacks criteria for determining a defendant's sentence within the legislatively specified range, that his sentence was excessive under federal sentencing guidelines, and that he was punished for exercising his right to trial; 4) that the evidence was insufficient to establish petitioner's guilt of attempted murder; 5) that trial counsel was ineffective because he: a) failed to object when a police witness suggested petitioner had a criminal record, b) concluded his summation by asking the jury to find petitioner "guilty," and c) failed to object to allegedly improper summation comments by the prosecution; 6) that petitioner's sentence was excessive for a first time felony offender; and 7) that appellate counsel was ineffective in failing to raise the argument that the indictment failed to provide proper notice. (Id.)

At the time that the initial Petition was filed, not all of these claims had been exhausted in that petitioner had failed to raise some of them before the state courts. (See discussion infra

---

[13] The Court notes that this third claim – whether petitioner received ineffective assistance because his attorneys failed to advise him to take a plea – was not raised in either the original habeas Petition or his Amended Petition. (See discussion infra pp. 51-52).

Section V).  However, the claim that the evidence was insufficient for the attempted murder

conviction, the claim that he received ineffective assistance of trial counsel, and the sentencing

claims were all raised in his brief to the Appellate Division on the direct appeal, and were thus

exhausted at the time that the initial Petition was filed.

      G.  The 2013 Coram Nobis Application

While the initial habeas Petition was pending, petitioner moved for a writ of error coram

nobis in the Appellate Division, Second Department, on December 17, 2013, claiming that he

had received ineffective assistance of appellate counsel on various grounds.  On June 4, 2014,

the Appellate Division denied the writ of error coram nobis, holding that "[t]he appellant has

failed to establish that he was denied the effective assistance of appellate counsel."  People v.

Nedd, 118 A.D.3d 731, 986 N.Y.S.2d 849 (2d Dep't 2014).  Petitioner's subsequent application

for leave to appeal was denied by the Court of Appeals on September 18, 2014.  People v. Nedd,

24 N.Y.3d 963 (2014).

In a letter dated October 21, 2014, the Assistant District Attorney assigned to handle the

Petition submitted a letter to the district court indicating that while petitioner had exhausted some

of the claims in the Petition through his coram nobis motion, others remained unexhausted and,

in any event, all were without merit.  (10/21/2014 Ltr.[14]).

      H.  The 2015 Motion to Vacate the Judgment

On March 31, 2015, petitioner filed a second pro se motion to vacate his conviction and

to set aside his sentence, pursuant to Criminal Procedure Law Sections 440.10 and 440.20.

---

[14] Citations to "10/21/2014 Ltr." refer to ADA Koelsch's letter to the district court, dated
October 21, 2014, ECF No. 8.

(Barall Aff.,[15] Ex. W[16]). In this motion, petitioner claimed: 1) that he was actually innocent of attempted murder, and that his conviction was the result of ineffective assistance of counsel and prosecutorial misconduct; 2) that he was deprived of due process, equal protection, and his rights under the Criminal Procedure Law because the indictment did not provide adequate notice of the facts supporting the attempted murder charge; and 3) that his sentence of 20 years on the attempted murder charge violates various constitutional guarantees and the federal sentencing guidelines. (Id. at 1-3).

In a decision dated October 27, 2015, the Supreme Court, Kings County, denied his motion, finding that he had failed to state a prima facie claim of actual innocence because he failed to present any factual allegations to support the claim. (Barall Aff., Ex. Y[17] at 3).

The court also rejected petitioner's claims that but for errors on the part of defense counsel and the prosecution, the jury would not have found him guilty. (Id. at 3-5). Claiming that George's trial testimony was inconsistent with the DD-5 police report of the interview of George and with the Complaint Room Screening Sheet ("ECAB"), petitioner argued that counsel should have used this inconsistency to impeach George at trial and that the prosecutor knowingly adduced false testimony. (Id. at 5). The court, after reciting the proper standards under Strickland v. Washington, 466 U.S. 668 (1984), found both claims to be without merit. (Id.)

---

[15] Citations to "Barall Aff." refer to the Supplemental Affidavit in Opposition to Petition for Writ of Habeas Corpus, dated October 28, 2016, ECF No. 10.

[16] Citations to "Barall Aff., Ex. W" refer to petitioner's March 31, 2015 motion pursuant to New York Criminal Procedure Law Sections 440.10 and 440.20, attached to ADA Barall's Affidavit as Respondent's Exhibit W, ECF No. 10. Although some of the submissions state that this motion was filed on May 31, 2015, the correct date appears to be March 31, 2015, based on the final page of the motion.

[17] Citations to "Barall Aff., Ex. Y" refer to the Decision and Order denying defendant's March 31, 2015 motion pursuant to New York Criminal Procedure Law Section 440.10/440.20, dated October 27, 2015 and attached to ADA Barall's Affidavit as Respondent's Exhibit Y, ECF No. 10.

The court found that counsel could not be faulted for not using this evidence for impeachment because the source of the information was not provided and, nevertheless, the facts from the earlier reports were not inconsistent with George's trial testimony. (Id.) Since petitioner had failed to present any evidence that George made a false statement or that the prosecutor knowingly procured false testimony, the court found that there was no merit to either the ineffective assistance of counsel or prosecutorial misconduct claim. (Id. at 5-6). The court also found that these claims of ineffective assistance and prosecutorial misconduct were procedurally barred pursuant to Criminal Procedure Law Section 440.10(3)(c) because they could have been raised in an earlier motion but were not. (Id. at 6). In essence, the court held that because petitioner could have raised these new claims when he raised the earlier claims in his initial 440.10 motion, his attempt to do so in the second motion was barred. (Id.)

Similarly, with respect to petitioner's claim that the indictment provided an inadequate recitation of facts, the court found that that claim was procedurally barred because petitioner could have raised the issue on direct appeal but unjustifiably failed to do so. (Id. (citing People v. Cuadrado, 9 N.Y.3d 362, 365, 880 N.E.2d 861 (2007))).

Finally, the court noted that Section 440.20 permits a court to set aside a sentence only on a few specific grounds – namely, that it was unauthorized, illegally imposed, or otherwise invalid as a matter of law. (Id. at 7 (citing C.P.L. § 440.20[1])). According to the court, the sentence petitioner received of 20 years on the attempted murder charge was within the statutorily prescribed range, as was the five year term of post-release supervision. (Id.) Accordingly, the court denied petitioner's second 440 motion in its entirety. (Id.)

Petitioner's application for leave to appeal this decision was denied on April 7, 2016, and his application for leave to appeal to the Court of Appeals was also denied on June 27, 2016.

15

(Barall Aff. ¶ 11).

I.  The Amended Habeas Petition

On September 16, 2016, petitioner filed an Amended Petition for a Writ of Habeas

Corpus.  (Am. Pet.).  In this Amended Petition, petitioner raises the claims originally brought in

his initial Petition, along with additional claims raised in the state courts since the filing of the

original habeas Petition.  These include:  1) ineffective assistance of appellate counsel on various

grounds; 2) petitioner's competency to stand trial; 3) ineffective assistance of trial counsel for

not seeking a competency examination; and 4) the illegal and unconstitutional sentence.[18]

Respondent did not object to the filing of the Amended Petition but submitted a

Supplemental Memorandum of Law in Opposition to Petition for Writ of Habeas Corpus, urging

the Court to deny the Amended Petition in its entirety because the claims are procedurally barred

and without merit, or both.  (Supp. Mem.[19] at 1; see also Barall Aff. ¶ 14).

J.  Telephone Conference

On April 23, 2019, the Court held a telephone conference in this case.  Petitioner

appeared on his own behalf, and Victor Barall from the Kings County District Attorney's Office

appeared for respondent.  Petitioner and respondent agreed to consent to this Court for all

proceedings in this case, and the completed consent form was filed on May 14, 2019.

---

[18] In his original habeas Petition, petitioner raised the argument that his appellate counsel
was ineffective because she failed to raise the alleged deficiencies in the indictment.  Petitioner
does not raise this claim in his Amended Petition.  Moreover, Mr. Nedd argues that his sentence
was excessive in both Ground Three and Ground Six of his original Petition.  (Pet. at 5 & 9).  He
appears to have dropped one of these grounds in his Amended Petition, but he does raise
arguments relating to his sentence in the Amended Petition that are addressed infra pp. 43-46.
[19] Citations to "Supp. Mem." refer to the respondent's Supplemental Memorandum of
Law in Opposition to Petition for Writ of Habeas Corpus, attached as Exhibit to the
Supplemental Affidavit of ADA Victor Barall, in Opposition to Petition for Writ of Habeas
Corpus, dated October 28, 2016, ECF No. 10.

During the conference, petitioner also reiterated his argument that he should not have been sentenced to 20 years after he had been offered plea deals for two years and five years. Moreover, he argued that he should have been better advised by his counsel to accept the pleas offered by the prosecution. Although the latter argument was not raised in either Petition, the arguments that petitioner raised during the telephone conference are addressed in more detail below.

## DISCUSSION

I.  Timeliness of Petition

This habeas Petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (codified as amended in scattered sections of the United States Code), which provides that a "1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1). This limitation, absent certain exceptions that do not apply to this case, runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). A conviction is deemed final for AEDPA purposes when the defendant's time to seek certiorari before the United States Supreme Court has expired. See Williams v. Artuz, 237 F.3d 147, 151 (2d Cir. 2001).[20] Moreover, any "time during which a properly filed application for State post-conviction or other collateral review . . . is pending" is excluded from the calculation of the statute of limitations period. 28 U.S.C. § 2244(d)(2).

Petitioner's direct appeal to the Appellate Division was denied on December 27, 2011

---

[20] If the defendant files a petition with the United States Supreme Court, the conviction is final when certiorari proceedings have concluded. Williams v. Artuz, 237 F.3d at 151.

17

(see Koelsch Aff. ¶ 9 (citing People v. Nedd, 90 A.D.3d at 1076)), and petitioner's application

for leave to appeal to the Court of Appeals was denied on April 16, 2012. (See id. ¶ 10 (citing

People v. Nedd, 18 N.Y.3d at 996)). Under Rule 13 of the Rules of the Supreme Court of the

United States, petitioner's conviction became final 90 days after petitioner's motion for leave to

appeal to the Court of Appeals was denied, on July 15, 2012.[21]

Thus, the statute of limitations applicable to petitioner's habeas Petition would have

expired on July 15, 2013, one year after the period for petitioner to seek Supreme Court review

expired, but since he filed his initial motion to vacate the judgment pursuant to Criminal

Procedure Law Section 440.10 on October 9, 2012, the time for filing the habeas Petition was

stayed until July 26, 2013, when the Appellate Division denied petitioner's motion for leave to

appeal from the denial of his motion to vacate the judgment. Petitioner thereafter filed his initial

habeas Petition on October 3, 2013, and therefore, his original Petition was timely filed before

this Court.

However, the filing of a federal habeas petition does not toll the statute of limitations

under Section 2244(d)(2). Duncan v. Walker, 533 U.S. 167, 181-82, 121 S. Ct. 2120, 2129, 150

L. Ed. 2d 251 (2001); see 28 U.S.C. § 2244(d)(2) (stating that "[t]he time during which a

properly filed application for *State* post-conviction or other collateral review . . . is pending" is

excluded from the calculation of the statute of limitations period) (emphasis added). As a result,

the statute of limitations period was not tolled "during the pendency of [petitioner's] first federal

habeas petition." Id. Accordingly, after calculating the amount of time tolled by petitioner's

post-conviction motions brought in *state* courts, the Court finds that petitioner's Amended

---

[21]A petition for a writ of certiorari is timely when filed within 90 days after entry of
judgment of a state court of last resort or a United States court of appeals. Sup. Ct. R. 13.
Petitioner did not seek such relief.

Petition was filed well after the one-year statute of limitations period expired. Thus, at issue is whether the claims in petitioner's Amended Petition can be considered by this Court, given the expiration of the statute of limitations.

Amendments to <u>habeas</u> petitions are governed by Rule 15 of the Federal Rules of Civil Procedure. 28 U.S.C. § 2242 (stating that petitions "may be amended or supplemented as provided in the rules of procedure applicable to civil actions"); <u>Littlejohn v. Artuz</u>, 271 F.3d 360, 363 (2d Cir. 2001). Here, petitioner filed his original Petition on October 3, 2013, and he filed his Amended Petition on September 16, 2016. Therefore, petitioner cannot amend as a matter of course, pursuant to Rule 15(a)(1), because 21 days have passed since the original Petition was served.

Petitioner can file an amended petition under Rule 15(a)(2), given that respondent does not object to the amendment, and given that the "court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). However, where, as here, the statute of limitations has expired, amendments must relate back "to the date of the original pleading." Fed. R. Civ. P. 15(c)(1). Amendments relate back when they arise "out of the conduct, transaction or occurrence set out . . . in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). In a <u>habeas</u> proceeding, the original pleading is a <u>habeas</u> petition. <u>Mayle v. Felix</u>, 545 U.S. 644, 663-64 (2005). The Supreme Court has held that in the <u>habeas</u> context, new claims in an amended petition relate back only when they share a "common core of operative facts" with claims in the original petition. <u>Id.</u> at 663-64; <u>see also</u> <u>Fama v. Comm'r of Corr. Servs.</u>, 235 F.3d 804, 816 (2d Cir. 2000); <u>Nieves-Andino v. Conway</u>, No. 08 CV 5887, 2010 WL 1685970, at *7 (S.D.N.Y. Apr. 20, 2010). In other words, an amended petition does not relate back "when it asserts a new ground for relief supported by facts that differ in both time and type from those the original

pleading set forth." Mayle v. Felix, 545 U.S. at 650. Importantly, the fact that an original

petition and an amended petition pertain to the same "trial, conviction, or sentence" is not

sufficient to create a common core of operative facts. Id. at 664.

As discussed above, petitioner raises multiple new claims in his Amended Petition,

including: 1) ineffective assistance of appellate counsel on various grounds; 2) petitioner's

competency to stand trial; 3) ineffective assistance of trial counsel for not seeking a competency

examination; and 4) the illegal and unconstitutional sentence. The Court finds that the claims

relating to ineffective assistance of appellate counsel and his sentence relate back to the claims

raised in his original Petition. Specifically, petitioner raises in his Amended Petition that his

appellate counsel provided ineffective assistance based on her failure to forcefully raise the

alleged inconsistences in George's testimony. Such an argument was mentioned in the original

Petition. (Compare Pet. at 11-12 with Am. Pet. at 16). Similarly, petitioner argued that his

sentence was unconstitutional and excessive in his original Petition, as he does again in his

Amended Petition. (Compare Pet. at 5-6, 9-10 with Am. Pet. at 33-41). Although these

arguments presented in the Amended Petition are not identical to those presented in the original

Petition, the Court finds that they share a common core of operative facts.

However, while the arguments relating to his competency were raised in his 2012 motion,

they relate neither in time nor type to the claims in the original habeas Petition, nor do they arise

from a core of operative facts common to claims in the original Petition. Nevertheless, even

though the claims regarding his competency are untimely, the Court has considered the substance

of these new claims, and concludes that they are without merit.

II.     AEDPA Standards

Under 28 U.S.C. § 2254, as amended by AEDPA, the authority of federal courts to grant

writs of <u>habeas corpus</u> on the merits of claims filed by state prisoners is limited to instances in

which it can be shown that the adjudication of a claim on the merits in state court: (1) "resulted

in a decision that was contrary to, or involved an unreasonable application of, clearly established

Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1);

or (2) "resulted in a decision that was based on an unreasonable determination of the facts in

light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

In <u>Williams v. Taylor</u>, the Supreme Court indicated that the "contrary to" and

"unreasonable application" clauses of Section 2254(d)(1) have independent meanings. 529 U.S.

362, 404-05 (2000). Under the first prong, a state court decision is considered to be "contrary

to" clearly established federal law where the state court "applies a rule that contradicts the

governing law set forth in [Supreme Court] cases," or where the state court "confronts a set of

facts that are materially indistinguishable" from those considered by the Supreme Court, but

"nevertheless arrives at a result different from [Supreme Court] precedent." <u>Id.</u> at 405-06;

<u>accord</u> <u>Evans v. Fischer</u>, 712 F.3d 125, 132–33 (2d Cir. 2013); <u>King v. Greiner</u>, 453 F. App'x 88,

89 (2d Cir. 2011). The precedent providing guidance in this analysis are "'the holdings, as

opposed to . . . dicta" of the Supreme Court's decisions at the time of the state court decision.

<u>Contreras v. Artus</u>, 778 F.3d 97, 110 (2d Cir. 2015) (quoting <u>Williams v. Taylor</u>, 529 U.S. at

412).

Under the "unreasonable application" prong of Section 2254(d)(1), a state court decision

will be set aside if it involves an "unreasonable application" of the correct governing legal rule to

the particular facts of the case, <u>see</u> <u>Williams v. Taylor</u>, 529 U.S. at 407, 409; <u>King v. Greiner</u>,

453 F. App'x at 89; <u>Evans v. Fischer</u>, 712 F.3d at 133, or if the decision "refuses to extend a

legal principle that the Supreme Court has clearly established to a new situation in which it

should govern." <u>Emmons v. Artus</u>, 494 F. App'x 127, 128 (2d Cir. 2012) (quoting <u>Hoi Man</u>

<u>Yung v. Walker</u>, 468 F.3d 169, 176 (2d Cir. 2006)). In conducting this analysis, the appropriate

inquiry is whether the decision was objectively unreasonable, not merely whether it was

incorrect or erroneous. <u>Williams v. Taylor</u>, 529 U.S. at 409-11.

The Supreme Court has made it clear that review under Section 2254(d) is extremely

narrow. The Court has stated that <u>habeas</u> <u>corpus</u> is "'a guard against extreme malfunctions in the

state criminal justice systems, not a substitute for ordinary error correction through appeal.'"

<u>Woods v. Donald</u>, 135 S. Ct. 1372, 1376, 191 L. Ed. 2d 464 (2015) (quoting <u>Harrington v.</u>

<u>Richter</u>, 562 U.S. 86, 102-03 (2011)). A <u>habeas</u> court must first determine the theories that

formed the basis of the state court's decision, then ask whether "fairminded jurists could

disagree" that those theories were inconsistent with a prior Supreme Court decision. <u>Harrington</u>

<u>v. Richter</u>, 562 U.S. at 101. A <u>habeas</u> petitioner must show that the state court's ruling was "so

lacking in justification" that there was an error in existing law that is "beyond any possibility for

fairminded disagreement." <u>Id.</u> at 103. This standard is intentionally difficult to meet.[22] <u>Id.</u> at

102.

Under AEDPA, a state court's determination of a factual issue is "presumed to be

correct," 28 U.S.C. § 2254(e)(1); <u>Sarcina v. Artus</u>, 452 F. App'x 44, 46 (2d Cir. 2011), and the

petitioner has the "burden of rebutting the presumption of correctness by clear and convincing

evidence." 28 U.S.C. § 2254(e)(1). Moreover, "a decision adjudicated on the merits in a state

court and based on a *factual* determination will not be overturned on factual grounds unless

---

[22] See <u>Cameron v. Smith</u>, No. 11 CV 5100, 2011 WL 6708790 at *3 (E.D.N.Y. Dec. 21, 2011) (holding that "[t]his standard . . . is arguably the narrowest standard of judicial review in the law").

objectively unreasonable in light of the evidence presented in the state-court proceeding."

Miller-El v. Cockrell, 537 U.S. 322, 340 (2003) (citing 28 U.S.C. § 2254(d)(2)) (emphasis added).

III.     Exhaustion of Petitioner's Claims

Before considering the merits of each of petitioner's claims, this Court must first determine if petitioner has exhausted all available state remedies and whether federal habeas review is permissible.

A federal court may not grant a petition for a writ of habeas corpus unless a petitioner has exhausted all available state court remedies. See 28 U.S.C. § 2254(b)(1)(A); Picard v. Connor, 404 U.S. 270, 275-76 (1971); Richardson v. Superintendent of Mid-Orange Corr. Facility, 621 F.3d 196, 201 (2d Cir. 2010); Galdamez v. Keane, 394 F.3d 68, 72 (2d Cir. 2005); Aparicio v. Artuz, 269 F.3d 78, 89 (2d Cir. 2001); Vittor v. New York State Dep't of Corr. and Cmty. Supervision, No. 13 CV 3112, 2014 WL 1922835, at *3 (E.D.N.Y. May 14, 2014). This rule, based on principles of comity between state and federal courts, requires that the state have "the first opportunity to address and correct alleged violations of state prisoner's federal rights." Coleman v. Thompson, 501 U.S. 722, 731 (1991); accord Picard v. Connor, 404 U.S. at 275-76. "To fulfill the exhaustion requirement, a petitioner must have presented the substance of his federal claims 'to the highest court of the pertinent state.'" Bossett v. Walker, 41 F.3d 825, 828 (2d Cir. 1994) (quoting Pesina v. Johnson, 913 F.2d 53, 54 (2d Cir. 1990)), cert. denied, 115 S. Ct. 1436 (1995)). "'In order to have fairly presented his federal claim to the state courts[,] the petitioner must have informed the state court of both the factual and the legal premises of the claim he asserts in federal court.'" Rush v. Lempke, 500 F. App'x 12, 14 (2d Cir. 2012) (quoting Daye v. Attorney Gen. of State of New York, 696 F.2d 186, 191 (2d Cir. 1982) (en banc)).

A habeas petitioner satisfies the exhaustion requirement if he has presented his claim to the appropriate state courts in accordance with state procedural requirements, and has thereby "afford[ed] the state courts a meaningful opportunity to consider [the] allegations of legal error." Vasquez v. Hillery, 474 U.S. 254, 257 (1986) (citations omitted). Although some courts have insisted upon citation in the state pleadings to a specific clause of the Federal Constitution that is alleged to have been violated, courts in this Circuit have held that a claim may be "fairly present[ed] to the state courts . . . without citing chapter and verse of the Constitution" if there is: "(a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis [in factually similar circumstances], (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation." Daye v. Attorney Gen. of State of New York, 696 F.2d at 194; accord Carvajal v. Artus, 663 F.3d 95, 104 (2d Cir.), cert. denied, 132 S. Ct. 265 (2011); Jones v. Vacco, 126 F.3d 408, 413-14 (2d Cir. 1997) (holding that "[c]it[ation to] a specific constitutional provision or rel[iance] on federal constitutional precedents alerts state courts of the nature of the claim"); Williams v. Lord, 996 F.2d 1481, 1483 (2d Cir. 1993) (holding that petitioner had fully presented her claim to the state court where, "[a]lthough she did not cite specific constitutional provisions in her [state court] brief[,] . . . she explicitly asserted her constitutional right to present a defense . . . [and] cited a leading Supreme Court case in this area"), cert. denied, 510 U.S. 1120 (1994).

The legal claims raised in the state courts must also be the "substantial equivalent" of the claims raised in the federal petition. See Picard v. Connor, 404 U.S. at 278; accord Jones v. Murphy, 694 F.3d 225, 247 (2d Cir. 2012); Waterhouse v. Rodriguez, 848 F.2d 375, 381 (2d Cir. 1988) (noting that "[t]he legal theory relied upon in the federal court need not . . . be identical to

the legal theory presented to the state courts, provided that the essential factual allegations and the ultimate constitutional question raised in the federal petition were presented to the state courts"). Once a federal claim has been properly presented to the state courts, the claim is considered exhausted even if the state court did not address the claim on the merits and instead rejected it on a state procedural ground, or did not rule on the claim on either substantive or procedural grounds, but nonetheless had a fair opportunity to address the claim. See, e.g., Coleman v. Thompson, 501 U.S. at 731-32.

When Mr. Nedd's habeas Petition was initially filed in October 2013, it contained both exhausted and unexhausted claims. Under AEDPA, district courts faced with a "mixed" petition for habeas corpus may stay the petition to allow the petitioner to return to state court to exhaust previously unexhausted claims or may deny the unexhausted claims on the merits. See Rhines v. Weber, 544 U.S. 269, 278 (2005). See also 28 U.S.C. § 2254(b)(2). Since that time, however, petitioner initiated subsequent proceedings in the state courts and has exhausted all of his claims. (See discussion infra Section V).

IV.     Procedural Default

As a separate and distinct issue, the Court must also address whether there was a procedural default with respect to any of the claims in the state proceedings. See Engle v. Isaac, 456 U.S. 107, 129 (1982); Francis v. Henderson, 425 U.S. 536, 542 (1976). "A defendant whose claim is rejected in state court for failure to comply with a state procedural rule may be precluded from raising that claim on habeas review in federal court." Petronio v. Walsh, 736 F. Supp. 2d 640, 652 (E.D.N.Y. 2010) (citing Coleman v. Thompson, 501 U.S. at 729-30; Garcia v. Lewis, 188 F.3d 71, 79 (2d Cir. 1999)). Thus, even if a petitioner raises a colorable federal claim, habeas review is barred if the claim was rejected in the state court on a procedural ground

25

that is both "'independent' of the merits of the federal claim" and provides an "'adequate' basis for the court's decision." Id. (quoting Fernandez v. Smith, 558 F. Supp. 2d 480, 489 (S.D.N.Y. 2008)).

Here, the state courts have found that certain of petitioner's claims were procedurally barred because petitioner did not properly comply with the state's procedural rules. Where the state court relied on a procedural default in rejecting petitioner's claim, this Court has examined the merits of the claim regardless, and in each instance found the claims not only procedurally barred but also without merit. (See discussion infra).

## V. Petitioner's Claims

### A. Ground One – The Inadequacy of the Indictment

Petitioner's first claim is that the indictment: 1) failed to apprise the accused of the factual allegations for the conduct in support of the attempted murder count in the second degree; 2) denied petitioner proper notice of the particulars of the charge that would have helped prepare the defense; 3) failed to state the particulars that must inform the courts and the accused as to the acts in support of the charge; and 4) the supporting facts must be sufficient in law to support the charge and "the facts must originate from the original source. . . ." (Am. Pet. at 6).

The First Count of the indictment charged as follows:

> The Grand Jury of the County of Kings by indictment, accuses the defendant of the crime of attempted murder in the second degree [PL 110/125.25(1)] committed as follows:
> The defendant, on or about October 16, 2006, in the County of Kings, with intent to cause the death of Ellsworth George, attempted to cause the death of Ellsworth George.

(Ind.).

Although petitioner's claim regarding the inadequacy of the indictment was not raised on direct appeal, it was presented to the state court in petitioner's second 440.10/440.20 motion,

filed on March 31, 2015, and therefore the claim has now been exhausted. (Barall Aff. ¶ 8; Ex. W). However, in reviewing this claim, the state court held that it was procedurally barred because petitioner could have raised the issue on direct appeal but unjustifiably failed to do so. (Barall Aff., Ex. Y at 6).

Under Section 440.10(2)(c), a court considering a motion to vacate must deny the claim if sufficient facts appeared on the record for the claim to have been raised on direct appeal, but it was not. See People v. Cuadrado, 9 N.Y.3d at 364-65. The state court's reliance on a state procedural law, independent of the federal question, was proper in that New York Criminal Procedure Law § 440.10(2)(c) has been found to constitute an independent and adequate state ground. See Richardson v. Superintendent of Mid-Orange Corr. Facility, 621 F.3d at 201; Clark v. Perez, 510 F.3d 382, 390-93 (2d Cir. 2008); Bethea v. Walsh, No. 09 CV 5037, 2016 WL 258639, at *32 (E.D.N.Y. Jan. 19, 2016). Thus, habeas review is barred if the claim was rejected in the state court on a procedural ground that is both "'independent' of the merits of the federal claim" and provides an "'adequate' basis for the court's decision." Petronio v. Walsh, 736 F. Supp. 2d at 652 (quoting Fernandez v. Smith, 558 F. Supp. 2d at 489).

A defendant may overcome the preclusory effect of an independent and adequate procedural bar if he can establish "cause" for the procedural default and "prejudice" stemming therefrom. Murray v. Carrier, 477 U.S. 478, 485, 106 S. Ct. 2639, 2644, 91 L. Ed. 2d 397 (1986). In the alternative, a defendant who can demonstrate "actual innocence," can also overcome the procedural bar. McQuiggin v. Perkins, 569 U.S. 383, 386, 133 S. Ct. 1924, 1928, 185 L. Ed. 2d 1019 (2013). Here, petitioner has made no showing of cause or prejudice that would explain the failure to raise this claim on direct appeal, and he has also not demonstrated actual innocence as set forth infra pp. 29-32. For these reasons, his claim relating to the

sufficiency of the indictment should be denied.

However, even if the Court were to consider the merits of the claim, it is clear that the language in the indictment charging attempted murder in the second degree satisfied all of the constitutional requirements in that it contained all of the elements of the offense so as to fairly inform defendant of the charge, and it was sufficient to enable defendant to plead double jeopardy in defense of future prosecutions for the same charge. See United States v. Stevens, 210 F.3d 356 (2d Cir. 2000); United States v. Santeramo, 45 F.3d 622, 624 (2d Cir. 1995). Here, the indictment cited the relevant statute and the allegations closely tracked the language of the statute, including the approximate date and location of the crime and the identity of the victim. Palmer v. Marshall, No. 07 CV 5917, 2009 WL 47424, at *3 (S.D.N.Y. Jan. 8, 2009) (holding that "[a]n indictment need only track the language of the statute and, if necessary to apprise the defendant of the nature of the accusation[s] against him, state time and place in approximate terms") (quoting United States v. Frias, 521 F.3d 229, 235 (2d Cir. 2008)). Contrary to petitioner's contention, there is no requirement that the indictment contain detailed factual allegations of an evidentiary nature. See Bowman v. Ercole, No. 09 CV 480, 2010 U.S. Dist. LEXIS 143026, at *77-81 (S.D.N.Y. Sep. 1, 2010), report and recommendation adopted by 2011 U.S. Dist. LEXIS 42866 (S.D.N.Y. April 11, 2011); People v. Soto, 52 A.D.2d 852, 852, 382 N.Y.S.2d 810, 811 (1976), aff'd, 44 N.Y.2d 683, 376 N.E.2d 907 (1978) (holding that the indictment must contain a factual statement "without allegations of an evidentiary nature"); People v. Rampersaud, 52 A.D3d 336, 337 (1st Dep't 2008) (holding that "allegations of an evidentiary nature" need not be contained in the indictment).

Accordingly, even if the first ground of the Amended Petition was not procedurally barred from habeas review, a review of the merits of the claim shows that the state court's

decision was neither contrary to nor involved an unreasonable application of clearly established federal law.

B.     Ground Two – Actual Innocence

Petitioner's second basis for underline habeas relief is that he was actually innocent of the attempted murder charge and that he was only convicted due to his trial counsel's ineffective assistance and the prosecutor's misconduct, which prevented him from receiving a fair trial. (Am. Pet. at 8). In his Petition, petitioner cites various portions of George's testimony as George was describing the number of gunshots, where petitioner aimed his gun, where George was after he got out of the car, and how he was being chased around the vehicle by petitioner. (Id. at 8-9). Petitioner argues that George's statements during certain parts of the testimony were contradicted by other parts of his testimony and by Officer Domarecki's testimony as to the location of the glass fragments from the bullets. (Id. at 9). Petitioner also points to the facts contained in the DD-5 investigation report prepared on the date of the incident by Detective Arnao based on his interview with George, and the facts set forth in the complaint room screening sheet prepared on the day of petitioner's arrest by Myles McKenna, arguing that there were statements in the initial report and the screening sheet that contradicted those of George at trial. (Id. at 9-10).

Petitioner argues that these facts were not brought to the jury's attention and would have demonstrated that petitioner was not shooting at George, but rather was firing at the car and was therefore not guilty of attempted murder. (Id. at 11). Petitioner contends that George's contradictory testimony, when considered with other evidence, including the location of the damage caused by the bullets to the car, shows that George altered his testimony and intentionally lied in order to support the attempted murder charge. (Id.) Petitioner further argues

that the prosecutor in her opening statement "knowingly used perjured testimony" to obtain his conviction on the attempted murder charge because the prosecutor "states exactly what George testified too [sic]," and did not include facts that appeared in the screening sheet or the investigation report. (Id. at 15). Petitioner also argues that trial counsel was ineffective for failing to bring these inconsistencies to the attention of the jury. (Id.)

Like the first claim, this claim of actual innocence had not been exhausted at the time the initial habeas Petition was filed, but petitioner did raise this argument in his Section 440.10/440.20 motion filed with the state court on March 31, 2015. Thus, the claim has now been exhausted.

In reviewing the claim of actual innocence and the related claims of ineffective assistance and prosecutorial misconduct, the state court found that both the allegations of prosecutorial misconduct and ineffective assistance of trial counsel were procedurally barred because these claims could have been raised on direct appeal or in an earlier motion but were not. (Barall Aff., Ex. Y at 6). Therefore, like petitioner's claim relating to the adequacy of the indictment, the court held that these claims were barred pursuant to Criminal Procedure Law Section 440.10(3)(c). (Id.)

Under federal law, a claim for actual innocence can be the basis for considering a claim that is time-barred or procedurally barred. See McQuiggin v. Perkins, 569 U.S. at 386 (holding that actual innocence "if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or . . . expiration of the statute of limitations"); Rivas v. Fischer, 687 F.3d 514, 540 (2d Cir. 2012). A claim of actual innocence must be "both 'credible' and 'compelling.'" Rivas v. Fischer, 687 F.3d at 541. In order for a petitioner to demonstrate a "credible" claim of actual innocence, there must be "'new reliable evidence.'" Id.

(quoting Schlup v. Delo, 513 U.S. 298, 324 (1995)). This may consist of new exculpatory evidence not presented at trial, including scientific evidence, eyewitness accounts that are deemed trustworthy, or critical physical evidence. Id. Petitioner must also demonstrate that "in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt. . . ." Id. In McQuiggin v. Perkins, the Supreme Court made it clear that "[t]he gateway should open only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial.'" 569 U.S. at 401 (quoting Schlup v. Delo, 513 U.S. at 316).

In this case, petitioner raised his claim of actual innocence before the state court in his Section 440.10/440.20 motion, which evaluated the claim and denied it on the merits. (Barall Aff., Ex. Y at 3). The court found that the facts as summarized in the earlier reports were not inconsistent with George's trial testimony. (Id. at 5). In his habeas Petition, petitioner simply reargues the points raised in his prior motion and does not provide any new evidence, much less the credible and compelling evidence necessary to convince a court that it could not have confidence in the outcome of the trial. (See Am. Pet. at 8-15). Having reviewed the allegations in his Petition thoroughly, the Court finds no basis to conclude that the state court's evaluation of the merits was erroneous or that there was any new evidence presented to this Court that would demonstrate his actual innocence.[23] Thus, the Court finds that petitioner has not carried his

---

[23] The question of whether there is a freestanding federal constitutional claim of actual innocence is still an open question, and even if it was an available claim, the Supreme Court has held that the showing for such a claim would be "extraordinarily high." Herrera v. Collins, 506 U.S. 390, 417 (1993); see also Green v. Lee, No. 14 CV 6344, 2016 WL 110524, at *9 (S.D.N.Y. Jan. 8, 2016) (observing that "[n]either the Supreme Court nor the Court of Appeals for the Second Circuit has ever concluded that a habeas court can entertain a free-standing claim of actual innocence"), report and recommendation adopted, No. 14 CV 6344, 2016 WL 1275051 (S.D.N.Y. Mar. 31, 2016). As noted in Davis v. Walsh, No. 08 CV 4659, 2015 WL 1809048, *12 (E.D.N.Y. April 21, 2015), where the petitioner merely "marshals the same arguments about

31

burden of showing that the state court's denial of his actual innocence claim was contrary to or an unreasonable application of clearly established federal law. See Carey v. Musladin, 549 U.S. 70, 72-77 (2006); Allah v. Cunningham, No. 13 CV 2805, 2016 U.S. Dist. LEXIS 9615, at *19-24 (E.D.N.Y. Jan. 27, 2016); Davis v. Walsh, 2015 WL 1809048 at *11-12.

As to the related claims of prosecutorial misconduct and ineffective assistance of counsel, the state court also considered and rejected those claims on the merits despite the procedural bar. (Barall Aff., Ex. Y at 5-6). With respect to the claim of misconduct on the part of the prosecutor in presenting George's testimony, the state court found that based on the record, there was no evidence that George made a false statement or that the prosecutor knowingly procured false testimony. (Id. at 5). Thus, the court found that there was no merit to the claim of prosecutorial misconduct. (Id.)

To the extent that petitioner was complaining about counsel's failure to use the DD-5 and ECAB reports at trial, the court found that counsel could not have used this evidence for impeachment purposes because "the source of the information is not provided in the document and the individual who prepared it did not testify." (Id.) Accordingly, the court concluded that there was no basis for finding that counsel was ineffective. (Id.)

Where a defendant has made a claim that he received ineffective assistance of counsel, he must show that counsel's performance "fell below an objective standard of reasonableness" and that there is a reasonable probability that absent this error in performance, the outcome of the trial would have been different. Strickland v. Washington, 466 U.S. at 688; Gonzalez v. United

---

his trial counsel's failure to introduce" certain testimony, "[t]his showing falls woefully short of the applicable threshold." Given the Court's finding as to petitioner's failure to satisfy the standards for overcoming the state court's conclusion on the merits of his claim, the Court finds no reason to evaluate it as a freestanding claim.

States, 337 F. Supp. 2d 419, 423 (E.D.N.Y. 2004) (citing United States v. Leslie, 103 F.3d 1093, 1099 (2d Cir.), cert. denied, 520 U.S. 1220 (1997)). To establish a claim of ineffective assistance of trial counsel, a petitioner must prove: (1) that counsel's performance was deficient in that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) that this deficient performance prejudiced the defense in that the errors were "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland v. Washington, 466 U.S. at 687. "[T]he burden rests on the accused to demonstrate a constitutional violation." Carrion v. Smith, 549 F.3d 583, 588 (2d Cir. 2008) (citing United States v. Cronic, 466 U.S. 648, 658 (1984)).

Prior to the passage of AEDPA, habeas review of a claim of ineffective assistance of counsel required courts to "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." James v. Coughlin, 22 F.3d 427, 429 (2d Cir. 1994) (quotations and citations omitted). Under AEDPA, a habeas court reviewing the decision of a state appellate court that has denied a claim of ineffective assistance of counsel must deny an application for a writ of habeas corpus unless the adjudication of the state law claim "involved an unreasonable application of [] clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

Under AEDPA, "the Strickland standard . . . is the relevant 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Aparicio v. Artuz, 269 F.3d at 95 & n.8 (quoting 28 U.S.C. § 2254(d)(1)). However, for purposes of AEDPA, a petitioner need not demonstrate that his particular theory of ineffective assistance of counsel is itself also "clearly established." Id. at 95 n.8. Rather, for a petitioner to succeed under Section 2254(d)(1), he must show that the state court applied Strickland to the facts of his case in an "objectively

unreasonable manner." Bell v. Cone, 535 U.S. 685, 698-99 (2002); see also Yarborough v.

Gentry, 540 U.S. 1, 5 (2003).

Before examining the specific claim, the Court notes that in evaluating claims of

ineffective assistance of counsel, the New York Court of Appeals noted in People v. Baldi, 54

N.Y.2d 137, 146-47, 429 N.E.2d 400, 405, 444 N.Y.S.2d 893, 898 (1981), that the court must

"avoid both confusing true ineffectiveness with mere losing tactics and according undue

significance to retrospective analysis. It is always easy with the advantage of hindsight to point

out where trial counsel went awry in strategy." Counsel's decision as to how and with what

information to cross examine a witness is clearly a strategic decision that the court should not

second guess. People v. Baldi, 54 N.Y.2d at 146-47.

Here, petitioner faults counsel for failing to impeach George's credibility using these

inconsistences. As petitioner's appellate counsel noted in the Affirmation in Response to Coram

Nobis Application, trial counsel focused on other aspects of George's credibility and did "an

adequate job of assailing Mr. George's credibility." (Fahey Aff.[24] ¶ 9). A review of the trial

transcript shows that George was put in a situation that was fast paced and clearly frightening

from the perspective of someone being shot at multiple times. (Tr. at 188-93; see also Fahey

Aff. ¶ 11). While petitioner may have identified minor inconsistencies in the details of where

George was at the time specific shots were fired, none of these rise to the level of outright lies.

At the same time, there was indisputable evidence that the vehicle had been shot in a variety of

locations, corroborating George's testimony that petitioner was chasing him around the vehicle

shooting at him, and there was no evidence to demonstrate that George's identification of

---

[24] Citations to "Fahey Aff." refer to the affirmation of Lynn Fahey, petitioner's appellate
counsel, in response to petitioner's Motion for a Writ of Error Coram Nobis, dated March 4,
2014 and attached to Respondent's Oct. 21, 2014 Letter as Exhibit R, ECF No. 8.

petitioner as the shooter was inaccurate. (See, e.g., Tr. at 10-12).

Moreover, as the state court noted, the information contained in the screening sheet could not have been used for impeachment purposes because the source of the information was not given in the documents, and the individuals who prepared the document were not called to testify at trial. See Hayes v. Conway, No. 08 CV 5280, 2010 U.S. Dist. LEXIS 72542, at *36-37 (E.D.N.Y. July 19, 2010) (holding that because "the source of the information contained in the police report [was] not given, . . . the hearsay contained in the report cannot be considered a prior inconsistent statement . . . such that it could be used to impeach the witness"). The reason for such a ruling is clear in that any inconsistencies in documents prepared by others were not necessarily inconsistent with the witness's testimony. Escobar v. Senkowski, No. 02 CV 8066, 2005 U.S. Dist. LEXIS 44164, at *62-63 (S.D.N.Y. May 26, 2005), report and recommendation adopted by 2005 U.S. Dist. LEXIS 19234 (S.D.N.Y. Sep. 7, 2005) (holding that there was no ineffective assistance of counsel where trial counsel failed to impeach using a prior statement in a police report because the report "was not a prior inconsistent statement at all").

Petitioner has failed to show that counsel's failure to use these documents to impeach George's trial testimony fell below an objective standard of reasonableness. Nor has he shown that the outcome of the proceeding would have been different had the documents been used. Counsel's decision to focus on other areas of George's testimony is not something that is a basis for granting the Petition, and the state court's decision to reject these claims is neither contrary to clearly established federal law, nor did it result in a decision based on an unreasonable determination of the facts in light of the evidence before the state court.

Similarly, petitioner did not provide any evidence to prove that George gave perjured testimony or that the prosecution knowingly procured perjured testimony. Accordingly, the state

court's decision to reject the prosecutorial misconduct claim is neither contrary to clearly established federal law, nor did it result in a decision based on an unreasonable determination of the facts in light of the evidence before the state court.

C.    Ground Three – Ineffective Assistance of Appellate Counsel

Petitioner's third claim is that he received the ineffective assistance of his appellate counsel. (Am. Pet. at 16). In support of this claim, petitioner cites the alleged inconsistencies in George's testimony noted supra p. 29, and he contends that appellate counsel was ineffective because the brief before the Appellate Division failed to properly bring these inconsistencies to the attention of the court on appeal. (Id.) He appears to be arguing that if the Appellate Division had been made aware of these inconsistencies, they might have held the evidence insufficient to support the verdict. (Id.) Petitioner also challenges appellate counsel's effectiveness in arguing the strength of the evidence, the ineffective assistance of trial counsel claim, and the claims related to his sentence. (Id.)

Petitioner raised these claims in his petition for a writ of error coram nobis on December 17, 2013. (See 10/21/2014 Ltr., Ex. Q[25]). On June 4, 2014, the Appellate Division denied petitioner's motion, and on September 18, 2014, the Court of Appeals denied petitioner permission to appeal to that court. People v. Nedd, 118 A.D.3d 731, 986 N.Y.S.2d 849 (2d Dep't 2014), lv denied, 24 N.Y.3d 963 (2014). Accordingly, petitioner's third ground for habeas relief has been exhausted.

The Strickland standard for ineffective assistance of counsel applies equally to appellate counsel as well as trial counsel. See Smith v. Robbins, 528 U.S. 259, 285 (2000) (holding that

---

[25] Citations to "10/21/2014 Ltr., Ex. Q" refer to petitioner's Motion for a Writ of Error Coram Nobis, dated December 17, 2013, and attached as Exhibit Q to respondent's Oct. 21, 2014 Letter, ECF No. 8.

"the proper standard for evaluating [petitioner's] claim that appellate counsel was ineffective in neglecting to file a merits brief is that enunciated in Strickland"); Abdurrahman v. Henderson, 897 F.2d 71, 74 (2d Cir. 1990); Hughes v. Sheahan, 312 F. Supp. 3d 306, 333 (N.D.N.Y. 2018), appeal dismissed, No. 18-1694, 2018 WL 6334650 (2d Cir. Nov. 16, 2018). Accordingly, a petitioner alleging ineffective assistance of appellate counsel must prove both that: (1) appellate counsel acted unreasonably in failing to raise a particular issue on appeal, and (2) absent counsel's deficient performance, there was a reasonable probability that defendant's appeal would have been successful before the state's highest court. See Smith v. Robbins, 528 U.S. at 285; Aparicio v. Artuz, 269 F.3d at 95. Failure to raise a meritorious issue of state law on appeal may give rise to a violation of federal law sufficient to sustain habeas corpus relief only if the relevant standards under Strickland are met. Mosby v. Senkowski, 470 F.3d 515, 521 (2d Cir. 2006).

Appellate counsel "need not (and should not) raise every non-frivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." Smith v. Robbins, 528 U.S. at 288 (internal citations omitted). Indeed, it is not the role of a reviewing court to second-guess the reasonable professional judgment of appellate counsel as to the most promising claims on appeal. Lugo v. Kuhlmann, 68 F. Supp. 2d 347, 371-72 (S.D.N.Y. 1999). Thus, in order to establish constitutionally inadequate performance, a petitioner must show that appellate counsel "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." Rivera v. Portuondo, 156 F. App'x 426, 427 (2d Cir. 2005) (quoting Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994)).

Moreover, this Court is limited to determining that state appellate counsel was ineffective only if counsel failed to raise a claim on behalf of the defendant that implicated a clearly

established federal law as determined by the Supreme Court. See Mosby v. Senkowski, 470 F.3d at 519; Sellan v. Kuhlman, 63 F. Supp. 2d 262, 269 (E.D.N.Y. 1999), aff'd, 261 F.3d 303 (2d Cir. 2001).

Although petitioner challenges the adequacy of appellate counsel's brief, it is clear that counsel raised the issue of the legal sufficiency of the evidence and the excessive length of the sentence. The brief also raised concerns about the ineffectiveness of trial counsel because: 1) counsel failed to object to the police officer's testimony suggesting that petitioner had a criminal record; 2) he mistakenly concluded his summation by asking the jury to find petitioner "guilty;" and 3) he failed to object to certain allegedly improper comments made by the prosecutor in summation. (See also discussion infra pp. 47-51). Appellate counsel also made arguments regarding the application of the facts to the law in this case and, following the Appellate Division's affirmance of the conviction, counsel sought permission to appeal to the Court of Appeals, which was denied. Moreover, to the extent that petitioner is focused on the failure to bring the inconsistencies in George's testimony more forcefully to attention of the Appellate Division, a claim similar to that was raised in his first motion for a writ of coram nobis and rejected by the Appellate Division on the merits. People v. Nedd, 118 A.D.3d at 731.

Having reviewed petitioner's claim regarding the alleged inconsistencies in George's testimony, and finding that such a claim was without merit, the Court finds that appellate counsel's decision not to raise that claim on appeal does not rise to the level of ineffective assistance of counsel as required by Strickland. As noted, appellate counsel is not required to raise every non-frivolous claim, and it is not this Court's role to second-guess appellate counsel's "reasonable professional judgment" as to which claims to raise as the most promising claims on appeal. Lugo v. Kuhlmann, 68 F. Supp. 2d at 371-72; see also Smith v. Robbins, 528 U.S. at 288

(internal citations omitted). Accordingly, the Court finds that in rejecting petitioner's claim of ineffective assistance of appellate counsel, the state court did not unreasonably apply well established federal law.[26]

D.     Ground Four – Legal Insufficiency of the Evidence

Petitioner's fourth claim for habeas relief is that the evidence was insufficient to establish petitioner's guilt of attempted murder beyond a reasonable doubt because the evidence only reflected petitioner's intent to damage the car and not to kill George. (Am. Pet. at 31). Petitioner raised this claim before the Appellate Division in his direct appeal (Appeal Br. at 18-25), and the Appellate Division found that the evidence "was legally sufficient to establish the defendant's guilt of attempted murder in the second degree beyond a reasonable doubt," and that the verdict was not against the weight of the evidence. People v. Nedd, 90 A.D.3d at 1076. Petitioner has not demonstrated that the state court's decision on this issue was an unreasonable application of clearly established federal law.

In challenging the legal sufficiency of the trial evidence, a defendant carries a "very heavy burden," Fama v. Comm'r of Corr. Servs., 235 F.3d at 81; Einaugler v. Supreme Court of N.Y., 109 F.3d 836, 840 (2d Cir. 1997), and cannot succeed if "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319

---

[26] As stated supra note 18, petitioner argued in his original habeas Petition that his appellate counsel provided ineffective assistance by failing to raise the alleged deficiencies of the indictment on appeal. (Pet. at 11). Although he does not raise this argument in his Amended Petition, the Court has reviewed it out of an abundance of caution, and notes that petitioner exhausted this claim through his coram nobis motion. (10/21/2014 Ltr., Ex. Q). However, given that this Court found that the indictment satisfied constitutional requirements (see supra pp. 26-29), the Court denies this claim on its merits, as appellate counsel was not required under Strickland to raise a non-meritorious claim.

(1979). The <u>habeas</u> court is required to "defer to the jury's resolution of any conflicts in the testimony and to its assessment of the credibility of the witnesses." <u>Harden v. LaClaire</u>, No. 07 CV 4592, 2008 U.S. Dist. LEXIS 23617, at *29-30 (S.D.N.Y. Mar. 26, 2008).

In evaluating the state law charge of attempted murder in the second degree, the law is clear that the issue of intent may be inferred from the act itself or from the defendant's conduct. <u>Hughes v. Lebron</u>, No. 14 CV 9479, 2016 WL 5107030, at *8 (S.D.N.Y. Sept. 19, 2016) (citing <u>People v. Bracey</u>, 41 N.Y.2d 296, 301, 392 N.Y.S.2d 412, 416 (1977)). Although petitioner argues that he only intended to damage George's car, the evidence suggests otherwise. The photographs and officers' testimony regarding the location of the bullets corroborated George's testimony about the shooting and petitioner chasing him around the car. Moreover, the existence of the live rounds recovered at the scene corroborates George's testimony that the gun jammed and petitioner tried to clear it. Taken together, this evidence was clearly sufficient for the jury to conclude that petitioner was not just shooting at the car, but was attempting to kill George. Indeed, if petitioner's only intent was to damage the car, he would not have followed George around the car, and the location of the bullet holes corroborate George's testimony that petitioner was shooting directly at him as he moved. To the extent that petitioner has raised various arguments in his papers, these merely reflect his disagreement with the jury's assessment of George's credibility, which go only to the weight and not the sufficiency of the evidence. (Resp. Mem.[27] at 17 (citing <u>Correa v. Duncan</u>, 172 F. Supp. 2d 378, 381 (E.D.N.Y. 2001) (noting that federal courts are precluded from considering a claim that the verdict was against the weight of the evidence))).

---

[27] Citations to "Resp. Mem." refer to respondent's Memorandum of Law, filed in opposition to petitioner's original Petition for a Writ of <u>Habeas Corpus</u>, dated December 5, 2013, ECF No. 7.

Having thoroughly reviewed the arguments here, the Court concludes that there was no error on the part of the state court with respect to evaluating the sufficiency of the evidence that would warrant habeas relief.

E.    Grounds 5 and 6 – Petitioner's Competency

Petitioner's fifth claim is that the trial court erred in not sua sponte ordering a competency examination to determine if petitioner was fit to stand trial. (Am. Pet. at 31). In addition to complaining about the trial court's failure to order a competency exam, petitioner argues in his sixth claim for relief that the failure of trial counsel to investigate and present evidence of petitioner's incompetence to stand trial constituted ineffective assistance of counsel. (Id.)

Petitioner argues that there was "overwhelming evidence" that he was mentally unstable at the time of trial, citing:  1) his attempted escape after the verdict but before final judgment; 2) his involuntary commitment to Bellevue Hospital Center for psychiatric treatment; 3) his diagnosis and treatment at Bellevue; 4) the report of two psychiatrists at Bellevue; 5) the trial court's acknowledgment of petitioner's mental issues; 6) the acknowledgment by his defense counsel that petitioner had previously been diagnosed with bi-polar disorder; 7) the behavior of petitioner at trial; and 8) the admission by the prosecution on appeal that the trial court was aware of petitioner's mental disability. (Id. at 31-32). Thus, he argues that both the trial court and trial counsel failed to adequately address his competency.

Neither of these claims were raised in petitioner's original habeas Petition, but petitioner did raise them in his October 9, 2012 motion to vacate the judgment pursuant to Criminal Procedure Law Section 440.10. (See Koelsch Aff., Ex. H). By Order dated February 21, 2013, the Kings County Supreme Court rejected these claims on the merits. The court stated: "Based

41

on the court's colloquy with defendant and observations of his demeanor during the course of the trial there was no reasonable basis for this Court to believe that the defendant was unable to understand the charges against him or the proceedings that were taking place." (Koelsch Aff., Ex. J at 5). The court went on to find that the "record shows that the defendant was alert, coherent, and able to participate in the legal proceeding." (Id.)

On March 28, 2013, petitioner applied for leave to appeal the State Supreme Court's decision, which was denied on July 26, 2013. Thus, these claims have now been exhausted. However, as stated above, the Court finds that they are untimely. (See discussion supra p. 20).

Nevertheless, having reviewed the submissions by petitioner and the State, there is nothing upon which to conclude that the State Supreme Court unreasonably applied well established federal law in rejecting these claims. As stated above, in asserting a claim of ineffective assistance of counsel, petitioner must show that counsel's performance "fell below an objective standard of reasonableness" and that there is a reasonable probability that absent this error in performance, the outcome of the trial would have been different. Strickland v. Washington, 466 U.S. at 688. Mr. Farkas, who represented petitioner from shortly after his arrangement until March 28, 2008, and Mr. Sweeney, who represented petitioner from April 17, 2008 until approximately January 2009, both provided affirmations that they believed petitioner was competent while each attorney represented him. (Farkas Aff. & Sweeney Aff.[28]). The attorneys' failure to pursue a motion that they deemed to be without merit is not grounds for a finding of ineffective assistance of counsel. See 28 U.S.C. § 2254(d)(1); United States v.

---

[28] Citations to "Farkas Aff." and "Sweeney Aff." refer to the Affidavits of petitioner's counsel, George A. Farkas, Esq. and Thomas Sweeney, Esq., dated November 12, 2012 and November 14, 2012, respectively, and attached to the Affirmation of Adam M. Koelsch in Opposition to Motion to Vacate Judgment, ECF No. 7.

Regalado, 518 F.3d 143, 150 n.3 (2d Cir. 2008); Aparacio v. Artuz, 269 F.3d at 99 & n.10.

With respect to the court's failure to order a competency hearing sua sponte, the Court

finds that there was no reason for the trial court to doubt petitioner's ability to understand the

proceedings, based on the court's interactions with petitioner as well as his conduct during the

trial. See People v. Tortorici, 92 N.Y.2d 757, 765, 709 N.E.2d 87 (1999) (noting that "a

defendant is presumed to be competent," and that the decision to order a competency

examination "lies within the sound discretion of the trial court"). This finding is bolstered by the

psychiatric examination performed in this case, after which two medical professionals opined on

June 26, 2009, that Mr. Nedd did not lack the capacity to understand the proceedings against

him. (Tr. at 672).

Accordingly, the Court denies grounds five and six on the merits.

F.    Grounds Seven, Eight, and Nine – The Illegality of Petitioner's Sentence

In challenging his sentence, petitioner raises several claims: 1) that he should have

received leniency because he was a first time offender (Ground 7); 2) that the sentence exceeded

federal sentencing guidelines (Ground 7); 3) that the sentence punished petitioner for going to

trial (Ground 7); and 4) that New York's Penal Law Section 70.02 is unconstitutional because

the sentencing scheme lacked standards to govern the court's exercise of discretion (Grounds 8

and 9). (Am. Pet. at 33-34, 38-39).

Petitioner received a concurrent sentence of 20 years on the attempted murder count, 15

years on the criminal possession of a weapon count, and one year on the criminal mischief count.

(Tr. at 440). The sentences imposed on the weapon and criminal mischief charges were the

maximum permitted under New York Penal Law. See N.Y. Penal L. §§ 70.02(1)(b), (3)(b),

70.15(1), 145.00(1), 265.03(2). The 20 year sentence imposed on the attempted murder charge

was less than the maximum, which is 25 years. <u>See</u> <u>id.</u> §§ 70.02(1)(a), (3)(a), 110/125.25(1).

Petitioner challenged his sentence in part in his brief on direct appeal, where he argued that as a first time felony offender who had been offered a plea to 2 years and 5 years, his sentence was excessive. (Appeal Br. at 38-40). Lynn Fahey, his attorney on appeal, argued for leniency, citing his youth, his lack of a criminal history, his mental health, and the fact that no one was hurt in the incident. (<u>Id.</u>) The Appellate Division rejected his sentencing claim on the merits without discussion. <u>People v. Nedd</u>, 90 A.D.3d at 1076.

He also challenged his sentence in his March 31, 2015, motion to vacate the judgment and set aside the sentence, arguing that he should have been granted leniency as a first time offender, his sentence exceeded federal sentencing guidelines, and he was punished for exercising his right to go to trial. (Barall Aff., Ex. W). Moreover, petitioner argued in his 2015 motion – as he does in Ground Eight of his amended <u>habeas</u> Petition – that New York State Penal Law Section 70.02 is unconstitutional. (<u>Id.</u>) Petitioner also argued in his 2015 motion that his sentence violates the constitutional guarantee of equal protection, as raised in Ground Nine of the Amended Petition. (<u>Id.</u>)

On October 27, 2015, the state court rejected these arguments on the merits, stating "[t]he sentence he received . . . is within the statutorily prescribed range for such an offense. . . . Absent any legal basis for defendant's challenge to his sentence, this claim is rejected." (Barall Aff., Ex. Y at 7). As stated above, petitioner's application for leave to appeal this decision was denied on April 7, 2016, and his application for leave to appeal to the Court of Appeals was also denied on June 27, 2016. Thus, these claims have been exhausted.

Petitioner claims that the disparity between the plea deals, which offered a term of two to five years, and the sentence imposed by the state court of 20 years demonstrates that the court

sentenced him to this high sentence in retaliation for petitioner's decision to proceed to trial. (Am. Pet. at 34). Not only is there no suggestion in the record that the court was penalizing petitioner for exercising his right to proceed to trial, but courts have held that the fact that the court imposed a greater sentence after trial, does not, in itself, suggest vindictiveness on the part of the court. See United States ex rel. Williams v. McMann, 436 F.2d 103, 106-07 (2d Cir. 1970) (finding disparity of pretrial offer of three to seven years as opposed to the five to ten years imposed by the court not evidence of vindictiveness on the part of court or prosecution); Van Gorder v. Allerd, 387 F. Supp. 2d 251, 260 (W.D.N.Y. 2005) (holding that there was no basis to argue that the court was acting vindictively in imposing a more severe sentence than offered at the time of plea). The facts of this case differ from those in Izaguirre v. Lee, in which the district court found that the petitioner was entitled to a presumption of vindictiveness when the sentencing judge asked the petitioner – after he had rejected a plea deal but before trial had commenced – "do you understand that if you are found guilty after this trial you will do 25 years in prison?," and then sentenced him to 25 years, which was the non-mandatory statutory maximum. 856 F. Supp. 2d 551, 574 (E.D.N.Y. 2012). In the absence of any independent evidence to support petitioner's assertion of vindictiveness, the state courts correctly found no basis on which to vacate the sentence.

Moreover, since matters relating to sentencing are governed by state law and not cognizable in a habeas corpus proceeding, see Glucksman v. Birns, 398 F. Supp. 1343, 1352 (S.D.N.Y. 1975), and since the sentence was within the range prescribed by state law, "no federal constitutional issue is presented," White v. Keane 969 F.2d 1381, 1383-84 (2d Cir. 1992), and petitioner's claim regarding his sentence is not a ground for this Court to grant habeas relief. See also Hyatt v. Bellnier, No. 09 CV 6594, 2009 WL 3423359, at *14 (S.D.N.Y. Oct. 23, 2009)

(holding that "[a]n excessive sentence claim does not provide a basis for <u>habeas</u> relief").

Similarly, to the extent that petitioner argues that his sentence exceeded federal sentencing guidelines, this claim is not cognizable in an application for <u>habeas</u> relief because his sentence is governed by state law and not the federal sentencing guidelines.[29] Thus, the Court denies these claims on the merits.

G.    <u>Ground Ten – Ineffectiveness of Appellate Counsel</u>

Petitioner's tenth claim is that his appellate counsel was ineffective because counsel only challenged the 20 year prison sentence when petitioner believes that counsel should have challenged the concurrent sentence on all three charges as being unduly harsh for a first time offender who had been offered a much lower plea deal. (Am. Pet. at 41). Petitioner raised this claim of ineffective appellate counsel in his motion for a writ of <u>coram nobis</u>, and the Appellate Division denied the claim on the merits, holding that "[t]he appellant has failed to establish that he was denied the effective assistance of appellate counsel." 118 A.D.3d at 732 (citing <u>Jones v. Barnes</u>, 463 U.S. 745, 103 S. Ct. 3308, 77 L.Ed.2d 987 (1983); <u>People v. Stultz</u>, 2 N.Y.3d 277, 778 N.Y.S.2d 431, 810 N.E.2d 883 (2004)).

As the State noted in its brief before the Appellate Division, petitioner's appellate counsel actually argued in her papers that the sentence on the weapons possession count should have been shorter and could have been at a minimum three and one-half years. (10/21/2014 Ltr, Ex. S[30] at 21; Appeal Br. at 41; <u>see</u> Supp. Mem. at 11-12). Counsel argued that there was "no reason . . . to impose the maximum available term for the weapons possession" count, and she argued

---

[29] As stated above, this claim relating to the federal sentencing guidelines was also raised in his second 440 motion, filed in March 2015. (<u>See</u> Koelsch Aff., Ex. H).

[30] Citations to "10/21/2014 Ltr, Ex. S" refer to respondent's Memorandum of Law, filed in opposition to defendant's Motion for a Writ of Error <u>Coram Nobis</u> and attached as Respondent's Exhibit S to respondent's Oct. 21, 2014 Letter, ECF No. 8.

that the sentence should be modified and petitioner given "shorter concurrent determinate prison terms." (Appeal Br. at 40). Thus, contrary to petitioner's arguments, his appellate counsel did challenge the excessiveness of the weapons charge.

Moreover, since the trial court ordered that the sentences on the weapons charge and the criminal mischief charge were to run concurrently with the sentence imposed on the attempted murder charge, those sentences were effectively subsumed within the attempted murder sentence of 20 years. As a result, even if counsel had been able to persuade the court to lower the sentence on the weapons charge, petitioner would still have been facing 20 years on the attempted murder charge. Thus, had petitioner shown that his appellate counsel failed to raise this argument, he still would be unable to demonstrate that he suffered prejudice because the court found that the 20 year sentence on the attempted murder charge was not excessive and therefore would have remained unchanged, regardless of the outcome of this additional argument.

Having reviewed the merits of this claim, the Court finds that petitioner has failed to demonstrate that appellate counsel's representation in this regard "fell below an objective standard of reasonableness" and that absent this error, the outcome of the appeal would have been different. See Strickland v. Washington, 466 U.S. at 688.

H.    Ground Eleven – Ineffectiveness of Trial Counsel

Petitioner's final claim in his Amended Petition is that his trial counsel was ineffective for: 1) failing to object when a police witness' testimony suggested that petitioner had a prior criminal record; 2) concluding his summation by mistakenly asking the jury to find petitioner "guilty;" and 3) failing to object to comments made by the prosecutor in summation. (Am. Pet. at 44-45). This claim of ineffective assistance of trial counsel was raised on direct appeal to the

Appellate Division, which rejected the claim on the merits without further discussion. People v. Nedd, 90 A.D.3d at 1076 (holding that the "remaining contentions are without merit").

With respect to the first basis for challenging trial counsel's performance, Detective Arnao testified at trial that he located petitioner by performing some "computer checks" and then going to petitioner's address "that was in our records." (Tr. at 247-48). Although petitioner argues that this testimony suggested that petitioner had a prior criminal record, there is no evidence to suggest that this testimony, even if the jury interpreted it the way petitioner suggests, was not harmless in light of all the other evidence of petitioner's guilt. Counsel's decision not to object to this testimony may have been one of strategy and a desire not to bring additional attention to the testimony. In total, the failure to object does not rise to the Strickland standard, and there is no basis on which to conclude that the state court's determination in this regard constituted an unreasonable application of that principle to the facts of petitioner's case. See Parks v. Sheahan, 104 F. Supp. 3d 271, 285 (E.D.N.Y. 2015).

Similarly, the Appellate Division found the claim that counsel erred in misspeaking and requesting that the jurors find petitioner "guilty" did not rise to the level of ineffectiveness required by Strickland. Although it was unfortunate that counsel made this misstatement, shortly after the defense summation, the court gave counsel an opportunity to correct the statement before the jury. (Tr. at 360-61). Counsel explained to the jurors that he did not ask them to find petitioner guilty, but that his sore throat and the emphasis that he put on the words made it sound as if that is what he had said. (Id. at 361). There is nothing in the record to suggest that the jury did not accept this explanation, and it is highly unlikely that this misstatement led the jurors to believe that counsel thought his client was guilty. See People v. Fludd, 173 A.D.2d 840, 570 N.Y.S.2d 663 (2d Dep't 1991) (noting that "[a] solitary misstatement within the defense

48

counsel's summation is insufficient to support the defendant's contention that his counsel conceded his guilt"); see also People v. Sweeney, 84 A.D.3d 1123, 1124, 924 N.Y.S.2d 802, 803 (2d Dep't 2011). Having reviewed the record, the Court concludes that the state court's determination that this error did not rise to the level of ineffectiveness required by Strickland was not an unreasonable application of that principle to the facts of petitioner's case.

Finally, to the extent that petitioner argues that trial counsel failed to object to certain statements made by the prosecution in summation, again a review of the record supports the reasonableness of the Appellate Division's determination that this did not rise to the level of ineffective representation. In summation, the prosecution made several comments that petitioner finds objectionable.

First, the prosecutor commented on petitioner's demeanor during the trial noting that "[t]he defendant's not sitting over there at the table smiling right now because he was charged with loading that firearm." (Tr. at 375). However, this comment was made in response to petitioner's counsel's argument during cross examination that it was irrelevant whether defendant's prints had been found on the recovered bullets, because he was not being prosecuted for loading the gun, but for shooting at George. (Id.) The prosecutor did not suggest that the fact that petitioner was smiling was evidence of guilt.

Second, petitioner argues that the prosecutor made inflammatory remarks, seeking to invoke the juror's sympathy, when the prosecutor asked the jurors to imagine how George felt during the shooting. (Id. at 372). This comment was made in the context of the prosecutor's argument that it was unreasonable to believe that George, who had just been shot at several times, had the presence of mind to fabricate his identification and frame petitioner when speaking to the police immediately after the incident. (Id. at 357, 359-60). Even if the remark

was intended to promote sympathy, the trial court explicitly gave an instruction to the jury that it could not base its verdict on sympathy. (Id. at 393). The law presumes that the jury followed this instruction. See Weeks v. Angelone, 528 U.S. 225, 234, 120 S. Ct. 727, 145 L. Ed. 2d 727 (2000); United States v. Aquart, 912 F.3d 1, 34 (2d Cir. 2018). Here, the court took steps to cure whatever misconduct might have occurred from the prosecutor's remarks by giving this instruction. See United States v. Shareef, 190 F.3d 71, 78 (2d Cir. 1999).

Petitioner also argues that in the summation, the prosecutor placed the jurors in the role of "community defender." (Appeal Br. at 37-38). The comments though that are challenged by petitioner simply asked the jury to return a verdict of guilty; there was no suggestion that the jury had an obligation to the victim or the community. Such an argument has been held proper in the past. See Davis v. Poole, 767 F. Supp. 2d 409, 421 (W.D.N.Y. 2011); Figueroa v. Ricks, 378 F. Supp. 2d 210, 228 (W.D.N.Y. 2005).

In reviewing a habeas claim based on prosecutorial misconduct in the context of comments made during summation, the habeas court considers whether the prosecutor's comments "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)). As the court in United States v. Rodriguez noted, "It is a 'rare case' in which improper comments in a prosecutor's summation are so prejudicial that a new trial is required." 968 F.2d 130, 142 (2d Cir. 1992) (quoting Floyd v. Meachum, 907 F.2d 347, 348 (2d Cir. 1990)). In determining if the prosecutor's comments caused substantial prejudice, the court should consider: 1) the severity of the misconduct; 2) whether the court took measures to cure the misstatements; and 3) what the likely effect of the statements were on the outcome of the trial. United States v. Zemlyansky, 908 F.3d 1, 16 (2d Cir. 2018) (quoting

United States v. Banki, 685 F.3d 99, 120 (2d Cir. 2012)), cert. denied, No. 18-7778, 2019 WL 499846 (Mar. 18, 2019). Here, as noted, the prosecutor's comments were not improper. Moreover, there has been no showing that even if the comments were improper that they caused substantial prejudice to petitioner. The trial court gave specific instructions that summations were simply arguments and not evidence, and in light of the evidence in support of petitioner's guilt, petitioner has failed to demonstrate that these statements significantly impacted the outcome of the trial.

For the same reason, trial counsel's decision not to object to these comments is not a basis for concluding that petitioner received ineffective representation. See United States v. Cohen, 427 F.3d 164, 170 (2d Cir. 2005) (holding that the failure to object to a prosecution's proper summation did not constitute ineffective assistance of counsel); Cuevas v. Henderson, 801 F.2d 586, 592 (2d Cir. 1986) (finding that because the prosecutor's summation was appropriate, the defendant's counsel's failure to object did not support the conclusion that his performance fell below the "reasonably competent" standard of Strickland).

Accordingly, based on the review of the record, the Court finds that the Appellate Division's determination that petitioner's claims of ineffective assistance of trial counsel were without merit was neither contrary to nor involved an unreasonable application of federal law that would warrant habeas relief.

In addition to the ineffective assistance claims raised in the Amended Petition, petitioner raised in his 2012 440 motion that his trial counsel should have advised him to take the pleas offered by the prosecution. "Defense counsel have a constitutional duty to give their clients professional advice on the crucial decision of whether to accept a plea offer from the government." Pham v. United States, 317 F.3d 178, 182 (2d Cir. 2003) (citing Boria v. Keane,

99 F.3d 492, 498 (2d Cir. 1996)). The evidence in the record demonstrates that petitioner's trial

counsel communicated with Mr. Nedd about the plea offers and the ramifications of trial, and

Mr. Nedd rejected both offers. For example, during a pretrial hearing on March 29, 2008,

petitioner's counsel, Mr. Farkas, informed the court that he had requested a two-year plea deal

from the government, but Mr. Nedd refused to accept it. (Tr. at 3). Moreover, during a pretrial

hearing on January 6, 2009, Mr. Sweeney informed the court that petitioner had rejected a five-

year plea deal, stating that Mr. Sweeney "had an opportunity to speak with Mr. Nedd on

numerous occasions about the potential for a conviction, as well as the potential exposure he

could suffer should he be convicted of the top count. [He] [s]teadfastly maintained that is

innocent and rejected all offers by the District Attorney's Office." (Tr. at 12-13).

These transcripts are supported by the attorneys' affirmations. Specifically, Mr. Farkas

stated that he had advised defendant to take the two-year plea offer, given the evidence against

him and the potential sentence that he faced, but petitioner refused because he "wanted his trial."

(Farkas Aff. ¶ 16). Mr. Sweeney also stated that he told petitioner that he would likely be

convicted, but again petitioner refused to accept the government's offer. (Sweeney Aff. ¶¶ 11,

12). These affirmations are further corroborated by Mr. Sweeney's handwritten notes, attached

to his affirmation. (Tr. at 769-70).

Based on the transcripts and affirmations, the Court finds that petitioner's trial counsel

adequately communicated the plea offers to petitioner as well as the risks of proceeding to trial,

and petitioner rejected the offers. Thus, in denying petitioner's initial 440 motion, the state court

properly concluded that trial counsel informed and advised petitioner about all plea offers,

meeting their obligations under Strickland. (See Barall Aff., Ex. Y at 6).

## CONCLUSION

In light of the above, the Petition for a writ of <u>habeas</u> <u>corpus</u> is denied, and the case is dismissed. Since petitioner has not made a substantial showing that his constitutional rights were denied, a certificate of appealability will not issue.[31] <u>See</u> 28 U.S.C. § 2253(c)(2). Petitioner may request a circuit judge of the United States Court of Appeals for the Second Circuit to issue the certificate. Fed. R. App. P. 22(b)(1). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be in good faith, and therefore, <u>in forma pauperis</u> status is denied for the purpose of an appeal. <u>Coppedge v. United States</u>, 369 U.S. 438, 444-45 (1962).

The Clerk of Court is respectfully requested to enter judgment and close this case.

**SO ORDERED.**

Dated: Brooklyn, New York
      May 14, 2019

s/Cheryl L. Pollak

_____
Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York

---

[31] To make this substantial showing, petitioner must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" <u>Slack v. McDaniel</u>, 529 U.S. 473, 475, 120 S. Ct. 1595, 1599, 146 L. Ed. 2d 542 (2000) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 & n.4, 103 S. Ct. 3383, 3395, 77 L. Ed. 2d 1090 (1983)).